AGREEMENT REGARDING ASSIGNMENT OF LEASE,
CONVEYANCE OF LICENSES AND CONTRACTS,
AND TRANSITION OF HOSPITAL OPERATIONS

This Agreement Regarding Termination of Lease, Conveyance of Licenses and Contracts, and Transition of Hospital Operations (Agreement), is entered into this 4th day of ~~March~~ April 2006, between GADSDEN COUNTY BOARD OF COUNTY COMMISSIONERS (the "COUNTY"), ASHFORD HEALTH CARE SYSTEMS, INC., ("DEBTOR"), and the OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHFORD HEALTH CARE SYSTEMS, INC. (the "COMMITTEE").

RECITATIONS

WHEREAS, the COUNTY owns a hospital and appurtenances located at 23186 Blue Star Highway, Quincy, Florida, formerly known as Gadsden Memorial Hospital, now known as Gadsden Community Hospital (the "HOSPITAL");

WHEREAS, AHCA issued a license for the operation of the HOSPITAL, which license has been transferred from time-to-time to successive lessees/operators of the HOSPITAL.

WHEREAS, the COUNTY entered into a lease dated June 22, 1996, with MEDTECH of North Fl., Inc., (MEDTECH) leasing the HOSPITAL to MEDTECH under the terms and conditions stated therein (the "1996 LEASE");

WHEREAS, on February 1, 1998, MEDTECH entered into a Hospital Management Agreement with Centennial Healthcare Management Corporation (CENTENNIAL) whereby CENTENNIAL agreed to provide a full range of management services at the HOSPITAL;

EXHIBIT "A"

WHEREAS, on October 20, 1998, CENTENNIAL entered into a Loan Agreement between the COUNTY and CENTENNIAL, under which it would take assignment from MEDTECH of its interests as lessee under the 1996 LEASE or form a nonprofit corporation to for such purposes;

WHEREAS, on February 3, 1999, DEBTOR was formed as a Florida nonprofit corporation;

WHEREAS, the DEBTOR was formed as a Florida nonprofit corporation in accordance with the October 20, 1998, Loan Agreement between the COUNTY and CENTENNIAL, in order to take assignment from MEDTECH of its interests as lessee under the 1996 LEASE; and

WHEREAS, assignment to DEBTOR of the interests of MEDTECH as lessee under the 1996 LEASE was approved by the COUNTY, effective February 10, 1999;

WHEREAS, DEBTOR as lessee of the 1996 LEASE exercised the renewal option set forth in the Article IV thereof;

WHEREAS, the COUNTY and DEBTOR entered into a new lease, effective July 1, 2001, leasing the HOSPITAL to DEBTOR under the terms and conditions stated therein (the "LEASE");

WHEREAS, AHCA approved DEBTOR'S application for a Change in Ownership ("CHOW"), transferring the license of the HOSPITAL from MEDTECH to DEBTOR;

WHEREAS, the COUNTY has contended that DEBTOR is in default under terms of the LEASE and has issued certain notices of default to DEBTOR, as well as a notice of termination of the LEASE;

WHEREAS, DEBTOR had disputed the defaults under the LEASE and has contended that the COUNTY owes it relief for uncompensated indigent care under certain terms of the LEASE and has raised a claim for compensation in Count II of its August 16, 2005, complaint against the COUNTY (Case No. 05-961-CAB, Florida Second Circuit, Gadsden County), seeking damages in the amount of $5,300,000 for indigent care exceeding $300,000 per year;

WHEREAS, on November 4, 2005, the Agency for Health Care Administration (AHCA) entered an Emergency Order of Immediate Suspension of License wherein DEBTOR'S license to operate the HOSPITAL (License No. 4367) was immediately suspended;

WHEREAS, on November 14, 2005, DEBTOR filed a Chapter 11 petition in bankruptcy in the United States Bankruptcy Court for the Northern District of Florida, Tallahassee Division, N.D. Case No. 05-45011 (the "BANKRUPTCY");

WHEREAS, the COUNTY has formed Gadsden Hospital, Inc., ("GHI") as a nonprofit corporation under Florida Laws, and is prepared to lease the HOSPITAL to GHI upon termination of the LEASE;

WHEREAS, the COUNTY and GHI contemplate that GHI would hold the state license for the HOSPITAL, as well as any other license and contracts for its operation and reimbursement by State and Federal agencies;

WHEREAS, the parties are desirous of resolving matters regarding control of the operation of the HOSPITAL;

WHEREAS, the parties agree that maintaining the grandfathering of the Critical Access Hospital ("CAH") designation for the HOSPITAL under current Federal Regulations is an important goal of the parties; and

WHEREAS, the parties have met and discussed the possibility of settlement of pending disputes, with an intent toward transferring to the COUNTY or GHI the operation and licensing of the HOSPITAL and resolving certain of DEBTOR'S potential liabilities to AHCA.

NOW THEREFORE, IT IS AGREED AS FOLLOWS:

### TERMS

1. The foregoing RECITATIONS are true and are incorporated into these Terms as if fully set forth herein.

2. The COUNTY'S obligations under this Agreement are conditioned on the transfer to the COUNTY or GHI, as the COUNTY may elect, DEBTOR'S state licensure for the Hospital (AHCA LICENSE), as well as the transfer to the COUNTY or GHI, as the COUNTY may elect, DEBTOR'S Medicare Provider Number, Medicare provider agreement with the Secretary of the Department of Health and Human Services and Medicaid licenses or contracts, all in a manner that preserves the CAH designation for the HOSPITAL, without lapse or limitation (collectively, the "CMS AGREEMENTS"), as well as all conditions of Medicare, Medicaid and other forms of reimbursement that were available to the HOSPITAL prior to November 4, 2005 ("TERMS OF REIMBURSEMENT").

3. The COUNTY agrees that, upon the transfer to the COUNTY or GHI, as the COUNTY may elect, of the LICENSES and CONTRACTS as described in Paragraph 6, and upon the satisfaction of the conditions stated in Paragraph 4:

   a. The COUNTY shall assume responsibility under the AHCA LICENSES to pay amounts due by DEBTOR to AHCA under State regulations and the provisions governing its Medicare and Medicaid reimbursements or as otherwise required by AHCA regarding the maintenance, operation or repair of the HOSPITAL[1]; and

   b. The COUNTY and the DEBTOR shall settle all outstanding disputes arising solely from the real property claims of the COUNTY against the DEBTOR as follows:

   i. The COUNTY shall pay upon the entry of a non-appealable Order by the Bankruptcy Court approving the Agreement the sum of $300,000 to the DEBTOR's Estate. The parties agree that the purchase price is to be allocated as follows:

   1. Up to $25,000 for any personal property of the DEBTOR in which GE claims a secured interest.

   2. Up to $10,000 of the purchase price shall be allocated to the DEBTOR as the cost of assisting the COUNTY in the transfer of the AHCA LICENSES.

   3. The remaining $265,000 shall be in settlement of the remaining leasehold claim of the DEBTOR in the real property and as settlement of any and all claims to possession by the DEBTOR to the real property.

---

[1] To the extend that this provision conflicts the any provision in the agreement between the County and AHCA, the agreement between the County and AHCA shall prevail.

      c.    The COUNTY shall enter into an agreement with AHCA which provides for the assumption of all pre-petition liability to AHCA by DEBTOR for all AHCA liability except for any liability arising from services rendered pre-petition by the DEBTOR, but not yet invoiced to AHCA[2];

      d.    The Agreement with AHCA shall provide that all claims of AHCA against the Debtor are deemed satisfied, but shall not limit AHCA ability to offset reimbursements for services rendered pre-petition but not yet invoiced to AHCA[3].

    4.    The COUNTY shall have no obligation under this Agreement to DEBTOR or any other party to this Agreement should any of the following events occur individually or collectively:

      a.    The COUNTY and AHCA are unable to come to agreement regarding the amounts due by DEBTOR to AHCA under State regulations and the provisions governing its Medicare and Medicaid reimbursements.

      b.    AHCA refusing or failing to transfer the AHCA LICENSE;

      c.    CMS failing or refusing to confirm in writing, within a reasonable period of time, any of the following: i) that the CAH designation of the HOSPITAL remains in effect; ii) that the Medicare Provider Number and Medicare Provider Agreement can be transferred to the COUNTY or GHI without adverse affect on the TERMS OF REIMBURSEMENT; iii) that the CAH designation of the HOSPITAL will remain in effect after the transfer; and iv) that the CAH designation will remain grandfathered after January 1, 2006;

---

[2] To the extend that this provision conflicts the any provision in the agreement between the County and AHCA, the agreement between the County and AHCA shall prevail.

[3] To the extend that this provision conflicts the any provision in the agreement between the County and AHCA, the agreement between the County and AHCA shall prevail.

   d. CMS refusing or failing to transfer any one part of the CMS AGREEMENTS, be it the Medicare Provider Number, Medicare provider agreement, or Medicaid licenses or contracts.

   e. CMS refusing or failing to agree to continue the CAH Designation for the HOSPITAL upon transfer of the AHCA LICENSE and CMS AGREEMENTS to the COUNTY.

   f. Any change to the TERMS OF REIMBURSEMENT that is adverse to the COUNTY, GHI, their agents or assigns.

  5. Should any of the foregoing items in paragraph 4 occur, the COUNTY may, at its sole option, agree to continue its performance under paragraph 3 without any change in terms or conditions, request that the parties initiate discussions to modify the terms or conditions, to which DEBTOR and the signatories hereto may agree. Should the parties fail to agree, then this Agreement is void. Only a written and duly signed notice issued by the COUNTY to DEBTOR shall be effective under this provision.

  6. DEBTOR agrees to transfer to the COUNTY or GHI, as the COUNTY may elect, DEBTOR'S AHCA LICENSE, its Medicare Provider Number, Medicare provider agreement with the Secretary of the Department of Health and Human Services and Medicaid licenses or contracts (collectively, CMS AGREEMENTS) and other licenses and contracts with State and Federal agencies and all other transferable permits necessary and useful for the operation of the HOSPITAL and reimbursement for services, including all those necessary to preserve the grandfathering of the CAH designation of the HOSPITAL and reimbursement under Federal regulations related thereto (the LICENSES and CONTRACTS).

a.  DEBTOR and the COUNTY agree to timely complete, execute and submit all documents necessary to accomplish such transfers. DEBTOR and the COUNTY will cooperate in the preparation and exchange all information, documents and executed papers and will coordinate in submittal thereof to AHCA, the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services (CMS) and all other licensing and contracting entities.

b.  DEBTOR and the COUNTY agree that time is of the essence in performing all duties under this Agreement, and that the following actions shall be undertaken within the times stated:

   i. Initial applications and submittals to AHCA and CMS and other licensing agencies for transfer of the AGREEMENTS and LICENSES shall be completed and submitted to AHCA and CMS and other licensing agencies within a reasonable time after the date a final order of the Bankruptcy Order approving this agreement.

   ii. The LEASE shall be assigned, effective 5 days after the date of AHCA'S approval of the CHOW application and issuance of a license to GHI.

   iii. DEBTOR shall vacate the premises within 30 days after assignment of the LEASE.

c.  DEBTOR and the COUNTY agree that DEBTOR'S liabilities under the licenses, agreements and permits shall not be transferred to the COUNTY, except as follows:

    i. The COUNTY will accept financial responsibility under the AHCA LICENSE for corrective action required at the HOSPITAL and for amounts due by DEBTOR to AHCA, as provided in Paragraph 3.

    ii. The COUNTY will accept financial responsibility under the Medicare Provider Number and Medicare provider agreement with the Secretary of the Department of Health and Human Services[4].

    iii. The COUNTY will accept financial responsibility under Medicaid[5].

7. DEBTOR represents that it has acted diligently to maintain and defend its AHCA LICENSE, Medicare Provider Number, CAH designation and other licenses and contracts with State and Federal agencies pending transfer to County or GHI, and agrees to provide the COUNTY with the up-to-date status of the same, and written authorization for COUNTY representatives to receive information from State and Federal agencies as may be necessary or useful to facilitate the COUNTY's communication with such agencies prior to transfer to County or GHI. DEBTOR will cooperate with the COUNTY in its efforts to obtain timely CMS confirmation: i) that the CAH designation of the HOSPITAL remains in effect or has been reinstated; ii) that the Medicare Provider Number and Medicare Provider Agreement can be transferred to the COUNTY or GHI; iii) that the CAH designation of the HOSPITAL will remain in effect

---

[4] The County shall not assume any liability for any misreported facts.

[5] The County shall not assume any liability for any misreported facts.

after the transfer; and iv) that the CAH designation will remain grandfathered after January 1, 2006.

8. GHI shall thereafter have sole right of possession of the premises after the date that DEBTOR vacates the HOSPITAL or 31 days after assignment of the LEASE, whichever occurs first.

   a. Except as expressly provided herein, DEBTOR shall be solely responsible for all licensing, permitting, contractual, financial, insurance, labor, payroll and tax obligations, including employment taxes, withholdings, insurance and other benefits accruing through its last day of occupancy, and shall make all payments and fulfill all other obligations related thereto, whether due prior to or thereafter. This provision shall be subject to any provisions of the BANKRUPTCY.

   b. The COUNTY or GHI, as the COUNTY may elect, shall have responsibility for all employment decisions and obligations at the HOSPITAL accruing after DEBTOR'S last day of occupancy and necessary to begin the process of reopening the HOSPITAL and, upon transfer of the LICENSES and CONTRACTS, shall be responsible for all subsequent licensing, permitting, contractual, financial, insurance, labor, payroll and tax obligations, including employment taxes, withholdings, insurance and other benefits, as provided by law.

   c. The parties agree that pursuant to this Agreement the COUNTY owns or is being sold all Goods or Equipment and inventory of the DEBTOR located at the HOSPITAL.

d. The parties agree that, as between the parties, DEBTOR shall be entitled to all pre-petition Accounts Receivable for the HOSPITAL. Nothing herein shall be interpreted to limit AHCA's rights to offset or recoupment.

9. The COUNTY and DEBTOR shall develop a timetable and steps for DEBTOR to wind down its business at the HOSPITAL that are consistent with Paragraph 6.b., above.

10. The parties will perform an inventory of all contents of HOSPITAL, including books and records, software and computer data.

11. The parties shall abide by the November 21, 2005, Order regarding the books and records in the HOSPITAL. All hard copy and computer records contained in the HOSPITAL shall be transferred to the COUNTY, with copies to be provided to DEBTOR as needed. However, where such records do not concern the HOSPITAL'S finances or operations, and are not needed by the COUNTY or GHI for regulatory accounting or accountability purposes, the parties agree to seek revision of the Judge's Order to allow DEBTOR to remove those original records and leave copies of nonproprietary information for the COUNTY or GHI. The parties agree that the COUNTY will have the right to inspect all records leaving the HOSPITAL.

12. DEBTOR will cooperate fully with the COUNTY in efforts to reopen the HOSPITAL under COUNTY or GHI control in accordance with State and Federal requirements, and to preserve all benefits of licensure, reimbursement agreements, certifications, etc., in effect prior to November 4, 2005.

13. Except as provided in a., below, this Agreement resolves all claims between the parties regarding the execution, performance and termination of the lease.

a. This Agreement shall not limit DEBTOR'S right to pursue its claim for unreimbursed indigent care at the HOSPITAL, nor limit any challenges, defenses or counterclaims available to the COUNTY in response thereto.

14. DEBTOR shall indemnify and hold harmless the COUNTY for all claims, causes, costs and liabilities under State and Federal regulations for any wrongful act by DEBTOR, their employees, officers, affiliates or agents occurring prior to transfer of the LICENSES and CONTRACTS, and the COUNTY shall indemnify and hold harmless DEBTOR for all claims, causes, costs and liabilities under State and Federal regulations for any wrongful act by its employees, officers or agents occurring after the transfer of the LICENSES and CONTRACTS.

15. Except with regard to the claim set forth in 12.a., above, DEBTOR shall dismiss with prejudice all pending lawsuits against the COUNTY and hereby waives all other claims in bankruptcy against the COUNTY. Further, except as set forth in 12.a above the COUNTY waives all other BANKRUPTCY claims against DEBTOR.

16. This Agreement shall not be effective as to any party unless and until duly executed by all parties. This Agreement represents a settlement between the parties and shall not be admissible, whether signed or unsigned, in any civil or other proceeding except a proceeding to enforce or seek damages for the breach of the provisions hereof. This Paragraph 16 shall survive any notice issued by the COUNTY pursuant to Paragraph 4 or any termination of this Agreement.

17. This Agreement shall be subject to the approval of the BANKRUPTCY Court, but shall be of no force and effect if any changes are required or imposed by the BANKRUPTCY Court as a condition of approval unless agreed to by both parties in a

duly-executed Supplemental Agreement setting forth the agreement of the parties thereto.

18.     Miscellaneous.

a.      Time is of the essence with regard to every term, condition and provision set forth in this Agreement. Time periods shall be calculated in calendar days unless otherwise specified. Time periods herein of less than six (6) days shall exclude Saturdays, Sundays and state or national legal holidays, and any time period provided for herein which shall end on Saturday, Sunday or a legal holiday shall be extended to 5:00 p.m. of the next business day.

b.      This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings (if any) relating to the subject matter hereof. This Agreement cannot be amended, modified or altered except by an agreement in writing that is executed by all parties.

c.      This Agreement shall be binding upon and shall insure to the benefit of the parties hereto, and their respective successors, permitted assigns, heirs and legal representatives.

d.      The rights and privileges granted by this Agreement are not assignable by either party hereto. However, this provision shall not limit the rights of the COUNTY or GHI to transfer or assign the HOSPITAL, or any agreement, contract, lease, license, permit or other authorization associated therewith to any person or organization, after the LEASE is assigned and the AHCA LICENSE, CMS AGREEMENTS and other licenses, permits and agreements have been transferred pursuant to this Agreement.

e.   The laws of the State of Florida shall govern the validity, construction, performance, enforcement and interpretation of this Agreement. Venue in any action concerning this Agreement shall in a court competent jurisdiction.

f.   This Agreement shall be deemed fully executed and binding upon each party only when all parties hereto and the signatories noted below have executed this Agreement as set forth below and are in possession of the original, a photocopy or faxed copy of the fully executed Agreement.

g.   If any provision of this Agreement is contrary to, prohibited by or deemed invalid under applicable law or regulation, such provision shall be inapplicable and deemed omitted to the extent as contrary, prohibited or invalid, but the remainder hereof shall not be invalidated thereby and shall be given full force and effect so far as possible. If any provisions of this Agreement may be construed in two or more ways, one of which would render the provision invalid or otherwise voidable or unenforceable and another of which would render the provision valid and enforceable, such provision shall have the meaning, which renders it valid and enforceable.

h.   Unless expressly stated herein to the contrary nothing in the Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of the Agreement on any person other than the parties hereto and their respective legal representatives, successors and permitted assigns. Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third persons to any party to this Agreement, nor shall any provision give any persons any right of subrogation or action over or against any party to this Agreement.

i.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A photocopy or facsimile copy of this Agreement and any signatory hereon shall be considered for all purposes as an original.

j.  Failure of a party to insist upon strict performance of any covenant or condition of this Agreement, or to exercise any right herein contained, shall not be construed as a waiver or relinquishment for the future enforcement of any such covenant, condition or right; but the same shall remain in full force and effect.

k.  The parties acknowledge that they have had equal bargaining strength, and that any rule of construction to the effect that ambiguities are to be resolved against one party or the other shall not apply in the interpretation of this Agreement.

l.  Nothing herein shall be construed as a waiver of the COUNTY'S sovereign immunity or a waiver of the benefits of Section 768.28, Florida Statutes, or any similar provision of law.

ENTERED INTO AND EFFECTIVE ON THE DATE ABOVE FIRST APPEARING

ASHFORD HEALTHCARE SYSTEMS, INC.

By: MICHAEL C. LAKE, PRESIDENT

CREDITORS COMMITTEE

By: DAVID BARRETT

GADSDEN COUNTY BOARD OF COUNTY COMMISSIONERS

By: ED DIXON, CHAIRMAN

ATTEST:

Gadsden County Clerk

CERTIFIED A TRUE COPY
NICHOLAS THOMAS, Clerk Circuit Court Gadsden County, Florida
By: _____ DEPUTY CLERK

248833-1