**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

| | |
|---|---|
| **Gadsden County and** )<br>**Gadsden Hospital, Inc.,** )<br>**Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**Michael O. Leavitt, in his official capacity** )<br>**as the Secretary of the United States** )<br>**Department of Health and Human** )<br>**Services,** )<br> **and** )<br>**Mark B. McClellan, MD, in his official** )<br>**capacity as Administrator,** )<br>**Centers for Medicare and Medicaid Services,**)<br>**Defendants.** )<br>_____ ) | **Case No 4:07cv51** |

**MEMORANDUM OF LAW IN SUPPORT
OF THE SECRETARY'S MOTION TO DISMISS**

**<u>Introduction</u>**

This matter arose from the decision of the Secretary of the United States Department of

Health and Human Services ("the Secretary") to terminate the Medicare provider agreement

between the Secretary and Ashford Healthcare, Inc. ("Ashford").  Prior to that decision, Ashford

had operated Gadsden Community Hospital and received Medicare payments for hospital

services pursuant to the Medicare provider agreement.  The decision to terminate the agreement

was based on inspections (known as "surveys" in regulatory parlance) of the hospital, completed

1

in October and November, 2005.  Those surveys revealed that the hospital was seriously

noncompliant with health and safety regulations that govern hospitals participating in the

Medicare program.

Based on the survey findings, the State of Florida revoked Ashford's license to operate

the hospital, and the Secretary's delegate, the Centers for Medicare and Medicaid Services

("CMS"), terminated Ashford's Medicare provider agreement in November, 2005.  The hospital

closed.  Ashford availed itself of its administrative appeal rights, requesting a hearing before an

Administrative Law Judge ("ALJ") in December, 2005.  The ALJ granted CMS' motion for

summary judgment, sustaining the survey findings underlying the termination.  Ashford did not

exercise its right to appeal the ALJ decision to the Departmental Appeals Board ("DAB").

In April, 2006, approximately five months after Ashford's Medicare provider agreement

had been terminated, the Plaintiffs in the instant action, Gadsden County and Gadsden Hospital,

Inc. (collectively "the County"), entered into an agreement with Ashford, in which Ashford

purported to agree to "transfer" its Medicare provider agreement to the County.  Subsequently,

the County apparently realized that there was no Medicare provider agreement.  Also, the

County apparently became dissatisfied with Ashford's efforts to get the termination of its

agreement rescinded through the administrative appeal process.  Three months after the ALJ had

granted summary judgment, the County attempted to "intervene" in Ashford's administrative

appeal.  Because the regulations governing administrative appeals of Medicare determinations

limit appeal rights to Medicare providers, the County was not allowed to intervene.

The County's current action is barred by 42 U.S.C. §§ 405(g) and(h), made applicable to

the Medicare Act by operation of 42 U.S.C. §1395ii. Title 42 U.S.C. § 405(h) prohibits judicial

review of Medicare determinations pursuant to any jurisdictional statute other than 42 U.S.C. §
405(g). 42 U.S.C. § 405(g) provides for judicial review only where: (1) the administrative appeal
process has been exhausted, and there has been a "final decision" of the Secretary; and (2) the
individual seeking judicial review was a party to the administrative appeal.

Ashford was the operator, and owner, for Medicare purposes, of the hospital.  Ashford
was the holder of the Medicare provider agreement, the recipient of all Medicare payments, and
the only entity with a right to appeal the survey findings underlying the termination of its
Medicare payments. Ashford did not fully exhaust its administrative appeal rights.  But even if it
had, under the statute governing judicial review of Medicare determinations, only Ashford would
have been allowed to seek judicial review of the Secretary's final decision.  Ashford has not
done so. Thus, this Court lacks subject matter jurisdiction to review the complaints that the
County attempts to raise on its own or Ashford's behalf.

<u>Statutes and Regulations Governing Medicare Participation and
Appeals of Medicare Determinations</u>

Entities that provide medical services participate in Medicare, thus receiving payments
from the Medicare program for services given to Medicare beneficiaries, by way of Medicare
provider agreements entered into with the Secretary. 42 U.S.C. § 1395cc(a)(1); 42 C.F.R. §
489.2(a) and (b).  From the standpoint of the Medicare program, the actual operator of the entity,
be it a hospital, nursing home, or other Medicare-eligible entity, is the provider.  Thus, lease of a
building constitutes a change of ownership, and the lessee/operator of the facility is the party to
the Medicare provider agreement, the recipient of the Medicare payments, and the party subject
to Medicare regulations, including health and safety regulations. 42 C.F.R. § 489.18(a)(4) and
(d).

3

The Secretary may terminate a Medicare provider agreement--and thus a provider's participation in Medicare--if the provider is found to be noncompliant with the provisions of the agreement, or with requirements set forth in the Medicare Act, or with regulations promulgated under the Medicare Act. 42 U.S.C. § 1395cc(b)(2); 42 C.F.R. § 489.53(a).  If the Secretary terminates a Medicare provider agreement, the termination is effective as soon as reasonable notice, as specified by regulation, is provided to the public and the provider. 42 U.S.C. §1395cc(b)(3)(incorporating effective date provision contained in 42 U.S.C. § 1320a-7(c)(1)). CMS is required by regulation to provide 15 days advance notice of termination of a Medicare provider agreement. 42 C.F.R. § 489.53(c)(1).

A Medicare provider that disputes the basis for termination of its provider agreement is entitled to an administrative appeal. 42 C.F.R. § 489.53(d).  The regulation at 42 C.F.R. § 489.53(d) specifies that the administrative appeal is governed by the regulations in 42 C.F.R. Part 498.  The regulation at 42 C.F.R. § 498.42, titled "Parties to the hearing," specifies that the parties to the administrative appeal are "the affected party" and CMS.  The regulations define the "affected party" as the provider that is subject to CMS' regulatory action. 42 C.F.R. § 498.2. The regulations thus limit participation in the administrative appeal to the actual operator of the health care facility.  The regulations do not provide for intervention or administrative appeals by third parties. If the provider is dissatisfied with the ALJ's decision, it is entitled to seek review by the DAB. 42 C.F.R. § 498.80. The DAB's decision is the final decision of the Secretary. 42 C.F.R. § 498.90.

A provider that is dissatisfied with the Secretary's final decision after an administrative appeal is entitled to seek judicial review pursuant to 42 U.S.C. § 405(g).  42 U.S.C. §

4

1395cc(h)(1)(A). Section 405(g) provides that an individual may seek judicial review of a final

decision of the Secretary "made after a hearing to which [the individual] was a party..." Section

405(h) of the statute is incorporated into the Medicare Act by 42 U.S.C. § 1395ii.  Section

405(h) specifies that,

> "No findings of fact or decision of [the Secretary] shall be reviewed by
> any person, tribunal, or governmental agency except as herein provided.  No
> action against [the Secretary] or any officer or employee thereof shall be brought
> under section 1331 or 1346 of Title 28 to recover on any claim arising under this
> subchapter."

It is well established that a claim arises under the Medicare Act, and thus is governed by

42 U.S.C. §§ 405(g) and (h), if the standing and substantive basis of the claim derive from the

Medicare Act. *Heckler v. Ringer,* 466 U.S. 602, 614-15 (1984); *Weinberger v. Salfi,* 422 U.S.

749, 750 (1975); *See also, American Academy of Dermatology v. Shalala*, 118 F. 3d 1495, 1498

(11th Cir. 1997)(42 U.S.C. § 405(g) is the "sole avenue" for judicial review of all claims arising

under the Medicare Act).  This is true even if the plaintiff casts the claim as a procedural or

Constitutional claim, rather than a claim for Medicare benefits *per se*. *Heckler v. Ringer,* 466

U.S. at 614, 622 (because plaintiffs were ultimately seeking Medicare payments, their

complaints about the Secretary's policies and procedures arose under the Medicare Act);

*Weinberger v. Salfi,* 422 U.S. at 760-61.

<u>Statement of Facts</u>

The facts that the Court needs to know in order to rule on this Motion are simple and

undisputed.  Ashford operated Gadsden Community Hospital, pursuant to a long term lease with

Gadsden County, which owned the real estate, from July, 2001, (Complaint, Paragraph 12), until

November, 2005, when the state suspended Ashford's license to operate the hospital (Exhibit G,

Paragraph B), and CMS terminated its Medicare provider agreement. Exhibit H, p. 2.[1]  Ashford

had participated in Medicare, operating the hospital with a critical access hospital ("CAH")

designation. Exhibit H, p. 1.  Designation as a CAH means essentially that the hospital serves a

rural area and is not located within 35 miles of another hospital. 42 U.S.C. § 1395i-

4(c)(2)(B)(i)(I).  Prior to the enactment of the Medicare Prescription Drug, Improvement, and

Modernization Act of 2003 (the "MMA"), states could designate hospitals that were within 35

miles of other hospitals as "necessary providers" of services, and the Secretary would designate

such hospitals as CAHs, even though they did not meet the geographic requirement for CAH

designation.  In 2003, the MMA eliminated states' abilities to waive the 35 mile rule for CAH

designation, but a grandfathering clause in the statute provides that Medicare-participating

hospitals designated as CAHs as of January 1, 2006, may retain their CAH designations. 42

U.S.C. § 1395i-4(h)(3).

As of January 1, 2006, the hospital that Ashford had operated was not certified to

participate in Medicare, much less as a CAH, because the Medicare provider agreement had been

terminated in November, 2005.  By letter dated November 10, 2005, CMS had notified Ashford

that termination was effective November 27, 2005. Exhibit H.  Thus, Ashford's Medicare

provider agreement, and the hospital's CAH designation, ceased to exist on November 27, 2005.

The hospital had shut down on November 4, 2005, when the State of Florida suspended

Ashford's license to operate the hospital. Exhibit G.  Ashford filed for bankruptcy protection on

November 14, 2005. Exhibit I.

---

[1] The Plaintiffs submitted with the Complaint documents marked as Exhibits A through
F.  The Secretary submits with this Motion and supporting Memorandum documents marked as
Exhibits G through K.

CMS advised Ashford of its right to an administrative appeal to contest the survey findings on which the termination was based. Exhibit H, p. 2.  Ashford exercised its right to appeal in December, 2005. Exhibit I.  The ALJ assigned to hear the appeal issued an initial order to the parties (CMS and Ashford) setting forth procedures and deadlines for filing briefs and exhibits, as well as procedures for filing dispositive motions. Exhibit C, p. 2.  Ashford did not respond to CMS' Motion for Summary Judgment, nor did it comply with the ALJ's initial order regarding submission of briefs and exhibits. Exhibit C, p. 2.  The ALJ granted CMS' Motion in June, 2006. Exhibit C.

By regulation, Ashford had 65 days, until August 12, 2006, to appeal the ALJ's summary judgment decision to the DAB. 42 C.F.R. § 498.40(a)(2).  On August 14, 2006, Ashford filed a request for a 60 day extension of time to appeal the ALJ's decision to the DAB and to file a request that the ALJ reopen his decision. Exhibit J. The DAB immediately granted Ashford's request for an extension of time to file an appeal, and so the appeal was due October 13, 2006. Exhibit K.  Ashford did not appeal, and the DAB closed the case. Exhibit K.

At some point after the termination of Ashford's license and Medicare provider agreement, the County formed a corporation for the purpose of opening and operating a new hospital at the site of the one formerly operated by Ashford. Complaint, Paragraph 14.  Ashford and the County signed an agreement in April, 2006, under which Ashford purported to agree to "transfer" its (nonexistent) Medicare provider agreement to the County. Exh. A, p. 4.  In August, 2006, as Ashford was requesting an extension of time to appeal the ALJ's decision, the County simultaneously sought to intervene in Ashford's administrative appeal. Exhibit J.

Because the regulations limit participation in administrative appeals to the Medicare providers who are subject to the disputed findings and sanctions, the ALJ denied the County's motion to intervene in Ashford's appeal. Exhibit D, pp 4-6.  The ALJ also rejected Ashford's demand that he reopen his decision, rejecting Ashford's contention that it had never received anything that the ALJ or CMS served on it.  Exhibit D.  Ashford never sought DAB review of either the ALJ's decision granting summary judgment or his refusal to reopen that decision. Exhibit K.

On November 20, 2006, more than a month after Ashford's extension of time to appeal the ALJ's summary judgment decision had expired, the County demanded that the DAB allow it to appeal the decision on Ashford's behalf. Exhibit. E.  The DAB refused. Exhibit E.  In so doing, the DAB noted that there was a "question" whether a third party asserting some possible, future interest could ever prosecute a Medicare provider's appeal. Exhibit E, p. 2.  The DAB concluded that even if the County were legally eligible to intervene or to prosecute Ashford's administrative appeal, the time for appeal of the ALJ decision had expired. Exhibit E, p. 3.  The County then filed the instant action.

<u>Argument</u>

This Court Lacks Subject Matter Jurisdiction to Review the Outcome of Ashford's Administrative Appeal.

The County asserts that this Court has jurisdiction to review its claims because the claims "arise under" (unspecified) federal laws and the Constitution, and jurisdiction is provided by the Administrative Procedure Act (5 U.S.C. § 702), by the statute providing for federal question jurisdiction (28 U.S.C. § 1331), and by various regulations governing the Secretary's

administrative appeal process (42 C.F.R. Part 498). Complaint, Paragraph 2.  This is nonsense.

The Complaint does contain various general denunciations of allegedly arbitrary or unconstitutional actions on the part of the ALJ and the DAB.  But the core demand is that this Court vacate the outcome of Ashford's administrative appeal and order the Secretary to conduct a second administrative appeal, starting from scratch at the ALJ level, so that the County can "assert defenses [to the survey findings]....on the behalf of Ashford."  Complaint, p. 14, Paragraph 3.  The County apparently reasons that, were it able to disprove the survey findings in a second administrative appeal, Ashford's old provider agreement would be reinstated, and the hospital would be considered to have had a CAH designation as of January, 2006. The County asserts that, were it to open a new Medicare-certified hospital on the site of the old one, with grandfathered CAH designation, the new hospital would receive "favorable Medicare reimbursement rates." Complaint, Paragraph 12.

Clearly, this case is, at bottom, an attempt to obtain Medicare funding for a new operation that the County hopes to start up under Ashford's long-defunct provider agreement. As such, the case arises under the Medicare Act and is thus governed by 42 U.S.C. §§ 405(g) and (h). *Heckler v. Ringer,* 466 U.S. at 614-22, 634 (holding that plaintiffs' claims, while cast as complaints about the Constitutionality and legality of a policy of the Secretary, were inextricably intertwined with ultimate claims for Medicare benefits and thus subject to 42 U.S.C. § 405(h)).

Section 405(h) prohibits judicial review of claims arising under the Medicare Act, except pursuant to Section 405(g).  Section 405(g) provides for judicial review only at the request of the party to administrative appeals, and only after those appeals have been fully exhausted.  Only Ashford, as the holder of terminated provider agreement, the recipient of the Medicare payments,

and the party responsible for the deficient care, was entitled to an administrative appeal. 42

C.F.R. §§ 498.2 and 498.42.[2]  Ashford did not fully exhaust its administrative appeal rights.

Exhibit K.  Even if it had, only Ashford would have been entitled to seek judicial review of the

termination of its Medicare provider agreement, pursuant to 42 U.S.C. § 405(g).  Section 405(g)

is the sole avenue for judicial review of Medicare determinations. *Heckler v. Ringer,* 466 U.S. at

614-22, 634; *American Academy of Dermatologists v. Shalala,* 118 F. 3d at 1498.  Ashford did

not seek judicial review.  Therefore, this Court lacks subject matter jurisdiction to review the

outcome of Ashford's administrative appeal.

---

[2]  The county is entitled to apply for its own Medicare provider agreement. 42 C.F.R. §§ 489.2 and 489.10(a).  In order to obtain a new Medicare provider agreement, the county would have to submit the new hospital to a survey by the state survey agency, which would determine whether the hospital met the applicable conditions of participation in Medicare. 42 C.F.R. § 489.10(d).  Were the county to apply for a Medicare provider agreement and be denied, based on survey findings, it would be entitled to an administrative appeal. 42 C.F.R. § 498.3(b)(listing initial determinations subject to administrative appeals, including the determination that a prospective provider (subsection (b)(1)) does not qualify as a provider).

<u>Conclusion</u>

For the reasons set forth herein, and on the authorities cited, this case should be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Respectfully submitted,

GREGORY ROBERT MILLER
United States Attorney


 /s/ ROY F. BLONDEAU, JR.
ROY F. BLONDEAU, JR.
Assistant United States Attorney
FL Bar #210013
U.S. Attorney's Office
111 North Adams Street, 4th Floor
Tallahassee, FLA 32301-1841
850/942-8430
Fax: (850) 942-8448


OF COUNSEL:
DANIEL MERON
General Counsel
SCOTT BRILES
Acting Chief Counsel, Region IV
ELIZABETH C. BENTON
Assistant Regional Counsel
Office of the General Counsel
U.S. Department of Health and
Human Services
Suite 5M60 AFC
61 Forsyth St., SW
Atlanta, GA 30303
Fax: (404) 562-7855

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the foregoing has been furnished this 12th day of

April, 2007, to Paul Sexton, Esq., Attorney for Plaintiff, Williams, Wilson & Sexton, P.A., 215

S. Monroe Street, Suite 600, Tallahassee, Florida 32301, through electronic filing with the Clerk

of the Court using CM/ECF filing system and electronic mail.


       __/s/ ROY F. BLONDEAU, JR._____
       ROY F. BLONDEAU, JR.
       Assistant United States Attorney